CONRAD ZWISLER, Appellant, v. W. B. STORTS *et al.*,
Respondents.

### Kansas City Court of Appeals, April 5, 1888.

30  163
118m625

1. EVIDENCE—OWNERSHIP—PRESUMPTION OF CONTINUANCE OF—POS-
SESSION.—Where the plaintiff is proved or admitted to be the
owner of property at a given time, the presumption of law is,
that he so continues to be, until there is a change of ownership by
sale or other disposition, and whoever relies upon such change
must prove it. Possession is *prima-facie* evidence of title, good
against everybody but one proving property, that is, against every-
body but the right owner.

2. PRACTICE—INSTRUCTIONS  NOT SUPPORTED BY EVIDENCE—WHEN
PREJUDICIAL.—It is error to submit a case to the jury on a theory
not supported by the evidence. The jury, being unlearned in the
law, and looking with reliant respect to the directions of the court,
may have accepted unchallenged the existence of a fact, as being
somewhere in the case, otherwise the court would not have
adverted to it. (*Willis v. Stevens*, 24 Mo. App. 525).

3. CONTRACT—DISTINCTION BETWEEN A SALE AND A CONTRACT TO SELL
—CASE ADJUDGED.—The distinction between a sale and an execu-
tory agreement to sell is this :   In the one case A sells to B ; in the
other he only promises to sell.  In the one case B becomes the
owner of the goods themselves, as soon as the contract is com-
pleted by mutual consent ; if they are lost or destroyed he is the
sufferer.  In the other case, as he does not become the owner of
the goods, he cannot claim them specifically ; he is not the sufferer
if the goods are lost; cannot maintain trover for them ; and has
not, at common law, any other remedy for breach of the contract
than an action for damages. (Benjamin on Sales, sec. 308).
*Held*, that the evidence in this case only shows an executory
agreement, but not a bargain and sale.

4. PRACTICE—PROPER COURSE IN JURY TRIAL—LIMITATIONS UPON
POWERS OF JURIES.—In trials before juries, the rule is that where
there is any evidence which tends to establish the complaint or
defence, from which the jury might reasonably infer the essential
fact, the court should not take the case from the jury.  But where
there can be no such reasonable inference drawn from the facts
proved to uphold the claim or defence, it is the duty of the court to
say so to the jury, and not permit them, against law and reason,
to confiscate private property.

5.  —— INSTRUCTIONS—WHEN BASED UPON NO EVIDENCE, ETC. PROPER COURSE.—The case is improperly placed before the jury when instructions are given submitting issues not justified by the evidence or abstractions calculated to mislead. The instructions should be directed to the facts of the case on trial.

APPEAL from Saline Circuit Court, HON. RICHARD FIELD, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

I. H. STANFORD and H. M. HARVEY, for the appellant.

I. There is no evidence to support the verdict in this case, and it ought not to stand. *Lionberger v. Pohlman*, 16 Mo. App. 392; *Ellis v. Bray*, 79 Mo. 227; *Fischer v. Transfer Company*, 13 Mo. App. 133.

II. Plaintiff sues for the conversion of sixteen steers. If there is any dispute in the evidence as to the title of the cattle, it is only to fifteen of them, and plaintiff should have had judgment for at least the value of one steer.

III. The court erred in giving instructions for defendants numbered one, two, and three, in this, that said instructions are not based upon the evidence given at the trial and tend to mislead the jury. For the same reason the court erred in amending plaintiff's first, second, and sixth instructions, and the case should be reversed. *State v. Bailey*, 57 Mo. 131; *Musick v. Railroad*, 57 Mo. 134; *McKeon v. Railroad*, 42 Mo. 79; *Raysdon v. Trumbo*, 52 Mo. 35.

IV. The contract governs in this case. The evidence showed no sale of the cattle in controversy. It was simply a contract for a sale. The agreement was, that the delivery of the cattle and the delivery of the deeds were to be simultaneous acts, and no title to the

cattle passed until the delivery of the deeds. *Brunswick Co. v. Martin*, 20 Mo. App. 158; Benj. on Sales, 334, and note, and authorities cited.

V. The sixth instruction of plaintiff and defendants' sixth instruction are contradictory of and inconsistent with each other, and the judgment should be reversed. *Price v. Railroad*, 77 Mo. 508; *Stevenson v. Hancock*, 72 Mo. 612; *Henschen v. O'Bannon*, 56 Mo. 298.

VI. The court erred in giving defendants' sixth instruction in this, that it leaves to the jury to say when a sale is completed; to say what facts constitute a sale. *Wyatt v. Railroad*, 62 Mo. 408. The instruction is altogether misleading.

RICH & RECTOR, for the respondents.

I. The verdict is supported by the evidence and the court will not disturb the finding unless the weight of evidence so preponderates in favor of the party complaining as to indicate such prejudice as would entitle the party to a new trial. *Wilkerson v. Railroad*, 26 Mo. App. 144; *Taussig v. Schields*, 26 Mo. App. 318; *Bank v. Armstrong*, 92 Mo. 265.

II. Plaintiff tried the cause on the theory that he was the owner of all the cattle, which theory the jury did not believe. Plaintiff cannot be heard in this court on the theory that Watkins only traded for fifteen head of cattle. No instruction was asked on this theory. *Whetstone v. Shaw*, 70 Mo. 575; *Walker v. Owens*, 79 Mo. 562; *Nance v. Metcalf*, 19 Mo. App. 190.

III. Where there is conflicting evidence as to delivery, it is a question of fact for the jury, and their finding is conclusive. *Glass v. Gelvin*, 80 Mo. 297.

IV. Instructions one, two, and three, given on the part of defendants, properly declare the law, and are amply supported by the evidence. *Hill v. Snell*, 6 Am. Rep. 216; *Crews v. Garneau*, 14 Mo. App. 505; *Carroll v. Railroad*, 14 Mo. App. 490; Bishop on Contracts, sec. 673; Addison on Torts [Wood's Ed.] p. 520, sec. 496.

V. Instruction six, given on part of defendants,

properly declares the law. *Rickey v. Zeppenfeldt*, 64 Mo. 277 ; *Bass v. Walsh*, 39 Mo. 192 ; *Woodburn v. Cogdal*, 39 Mo. 222 ; *Williams v. Gray*, 39 Mo. 201 ; *Nance v. Metcalf*, 19 Mo. App. 183 ; *Glass v. Gelvin*, 80 Mo. 297.

VI. The possession of Flesnor, plaintiff's agent, was, after sale, the possession of Watkins. *Glass v. Gelvin*, 80 Mo. 297 ; *Worley v. Watson*, 22 Mo. App. 546 ; *Erwin v. Arthur*, 61 Mo. 386.

VII. Plaintiff cannot complain of error in his own instruction. *Clifton v. Sparks*, 82 Mo. 115.

VIII. We respectfully submit that the points made by appellant in his brief are not well taken and that the authorities referred to by him do not sustain his position —that the jury looked the witnesses in the face and found a verdict for the right party.

PHILIPS, P. J.—This is an action in trover for the conversion of certain cattle alleged to be the property of plaintiff. The controversy grows out of the following state of facts : The plaintiff, in the summer of 1886, resided in the town of Independence, state of Kansas. He owned a farm about twenty miles therefrom, on which he had said cattle. In the early part of June, 1886, one Watkins made plaintiff a proposition to trade him certain lots in said town for said cattle. There is also evidence touching a pony owned by plaintiff being included in the negotiation, and some fence wire. The parties agreed upon terms of exchange, to be consummated, as plaintiff contends, on said Watkins making deeds transferring to plaintiff said lots. The pony and wire were delivered about that time to Watkins, who caused a conveyance of one lot to be made to plaintiff therefor. The evidence was, that Watkins was unable to make title to the other lots, as they were held by a bank in said town as security for debts owing to it ; and the bank would not convey until Watkins paid off the bank debt. The cattle remained on plaintiff's farm in charge of his agent or servant

until the ninth day of August, 1886. During that night some one, without the knowledge or consent of the plaintiff or his servant, drove the cattle away from plaintiff's pasture. After search made by the servant, and failure to discover the whereabouts of the cattle, he went to Independence and informed plaintiff of the disappearance of the cattle. The plaintiff at once got out handbills advertising the cattle as having been stolen, and offering a reward for their recovery. The cattle were traced to Kansas City, Missouri, whither they had been brought by railway, and sold to commission merchants by a man named Pettingill. The defendants, who resided in Saline county, Missouri, and were cattle dealers, bought the cattle from said commission merchants, and shipped them to their farm in Saline county, where the plaintiff traced them, and made claim of property to defendants. The parties came to Kansas City to see if the commission merchants would adjust the matter. Failing in this, it was agreed that plaintiff would pursue the thief, and see what he could get out of him; and if he failed he was to return and make proof of title. The plaintiff entertaining a suspicion that said Watkins was privy or accessory to the eloigning of the cattle procured his arrest and prosecution for the theft, but without conviction. Whether this prosecution failed from lack of proof that Watkins participated in the trespass, or other ground, the evidence does not disclose. In the meantime said Pettingill had been convicted of some other crime, and plaintiff did not prosecute him. Plaintiff then brought this action, which resulted in a verdict and judgment for defendants; from which plaintiff has appealed.

I. The cause was tried by both parties on the theory that plaintiff did own the cattle about the first of June, 1886. This was necessarily so because the defendants sought to justify their taking of the cattle through said Watkins by virtue of his contract of purchase from plaintiff. Where the plaintiff is proved

or admitted to be the owner of property at a given time the presumption of law is, that he so continues to be, until there is a change of ownership by sale or other disposition. Lawson Pres. Evid. 164. And, as said by Shaw, C. J., in *Magee v. Scott*, 9 Cush. 150 : "Whoever relies on such change must prove it; the proof lies on him; * * * that presumption of ownership continues until some alienation is shown. A party having this ownership does not lose it by permitting another to be in possession. The ordinary mode of proving property is, proving that it was purchased and paid for, and it will be deemed in law to be the purchaser's until something is shown to change the title, and merely parting with the possession affords no conclusive evidence of such change. Possession is *prima-facie* evidence of title, good against everybody but one proving property ; that is, against any one but the right owner." The ownership of plaintiff in these cattle existing beyond question in June, 1886, the burden rested upon the defendants to show plaintiff had parted with the ownership.

The circuit court, as indicated by the amendments made by the court to plaintiff's instructions, as well as those given on behalf of defendant, tried the case on the theory that there was evidence tending to show that Watkins was the person who removed the cattle from plaintiff's pasture, and that defendants acquired their possession through him. It is error to submit a case to the jury on a theory not supported by the evidence. *White v. Chaney*, 20 Mo. App. 389-97 ; *Boatmen's Savings Bank v. Overall*, 16 Mo. App. 570 ; *Skyles v. Bollman*, 85 Mo. 35. There was absolutely no evidence to warrant such instructions. To assume that Watkins carried away the cattle and sold them is to indulge in sheer speculation and conjecture, which courts in dealing with property interests should never permit. It cannot be maintained that this misdirection, or assumption was not hurtful to the plaintiff. As said in *Willis v. Stevens*, 24 Mo. App. 505 : "The jury, being

unlearned in the law and looking with reliant respect to the directions of the court, may have accepted unchallenged the existence of such fact as being somewhere in the case, otherwise the court would not have adverted to it."

II. Was there really any substantial evidence presented at the trial to justify the verdict of the jury? The only evidence of any contract of sale between plaintiff and Watkins is to be found, if at all, in the evidence of the plaintiff or his admissions. If the defendants rely for a divestiture of plaintiff's title upon his own testimony, they must accept that evidence as it is. The plaintiff's testimony was, that he did have a contract with Watkins about the purchase of fifteen head of cattle, and no more, whereas the defendants got hold of nineteen head. By the plaintiff's evidence, he agreed only to let Watkins have fifteen head of cattle in exchange for certain lots in the town of Independence. His statement is as follows: "I made an agreement with Watkins, provided he would make me a deed to the lots, I would let him have the cattle. He agreed to give me nine lots for the cattle; other property was with the lots. I got one lot from Watkins. Watkins agreed to give me the lot or pay the money for the pony. I took the lot for the pony and some barbed wire. The pony was worth about forty dollars; the barbed wire was worth about fourteen and ninety-eight hundredths dollars, which I gave for the lot. * * * Watkins and I went to look at the cattle about the eighth of June. I never had any talk with Watkins about the trade for the lots until we went and looked at the cattle." In his direct examination he further testified: "I owned the cattle to the ninth of August (the night they were taken away). They were not taken with my knowledge or consent. I never delivered them to the defendants. They never paid me anything for them. No one ever paid me for them. Eight of the lots were in the name of the Commercial Bank, and they would

not make a deed to them until Watkins paid what he owed them. * * * They (the bank) said they would not make a deed until Watkins paid what he owed them. The fifteen steers were to be delivered to Watkins when he gave me a warranty deed to the lots. He never gave me the deed." (This was about the first of July, 1886). "I never gave Watkins possession of the cattle. I told my man if Watkins came, he could give him the cattle. I told him this because Watkins told me he would bring his wife in three days and make me a deed to the lots." (This was about the first of July). This evidence only shows an executory agreement, but not a bargain and sale. Benj. on Sales, part 1, chap. 1, and book 2, chap. 1, sec. 308. "In the one case A sells to B, in the other he only promises to sell. In the one case, as B becomes the owner of the goods themselves as soon as the contract is completed by mutual consent, if they are lost or destroyed, he is the sufferer. In the other case, as he does not become the owner of the goods, he cannot claim them specifically; he is not the sufferer if they are lost—cannot maintain trover for them, and has not, at common law, any other remedy for breach of the contract than an action for damages." The contract here was but conditional, to be complete on Watkins making deed or title to the lots, and until he performed, the title remained in plaintiff. *Ridgely v. Kennedy*, 52 Mo. 25.

III. The defendants claim that further evidence against plaintiff is to be found in a former deposition given by him, which defendants introduced in evidence. There is a question made here by defendants' counsel that a part of this deposition read in evidence was omitted from the bill of exceptions, and we are asked to consider the omitted part. For the purposes of this inquiry we will concede to defendants all they claim in this respect. The full deposition is as follows:

"Q. Mr. Zwisler, when was it you and Watkins traded cattle for the lots you mentioned? A. I was with him on June 8, but we did not make any bargain;

he made some kind of a bargain; he said he would leave the cattle there until he made a deed; it was some time in July; the lots were not in his name; some were in the Commercial Bank's name."

"Q. After June 8, when did you have any more talk with Watkins in reference to this trade? A. He said he would make deed; when I came to Commercial Bank they said I could not trade with him. Mr. Guernsey said I had better not trade, as Watkins could not have the lots until he paid for them. Watkins gave me an order on them for the lots, but they said he must pay them first."

"Q. Did you ever give any one any permission, directly or indirectly, to take these cattle away from your farm? A. If he would give me what he said he would, he could take them away. He said he would not take them away unless he did give me something, or, some nine lots. I mean Watkins."

"Q. Did Watkins give you these lots or convey them to you, or any one of them for you? A. No, sir, he did not."

"Q. Did you ever deliver him these cattle, or direct any one else to deliver them to him? A. He promised me from one time to another that he would give me the deed; he never gave me the deed, so the cattle were mine; he never gave me the deed or any money. I told Fleener that I said if he would give me the deed, he (Watkins) could have the cattle."

"Q. Did Watkins ever give you a deed to these lots you refer to, or any money or other thing of value for these cattle? A. No, sir; nothing at all."

"Q. Did you ever receive any money, or any other thing of value from either of the defendants, or from any one else for these cattle? A. No, sir."

There is absolutely nothing in all this to warrant a jury in finding there was an unconditional sale of the cattle, and that plaintiff had parted with his ownership. The fact that Watkins gave an order on the bank for the deed furnished no proof of a completed sale, unless the

court is to permit the jury to wantonly reject the whole evidence bearing on the contract, which was that Watkins was to "leave the cattle there until he made a deed." The bank holding the title as security for its debt against Watkins would not make a deed until the debt was paid. If the mere giving an order on the bank was understood and intended by the parties as the completion of the sale, why were the cattle left in plaintiff's possession for a month afterwards?

IV. Nor can any reasonable inference be indulged in favor of a consummated contract of sale, from the fact that plaintiff, on the assurance of Watkins that he would bring his wife in in three days and make the deed, told his servant in charge of the cattle to deliver them to Watkins if he came for them. This was a private direction to plaintiff's servant based on the assurance of Watkins that he would perform on his part by making the deed, and on the assumption that Watkins would not go out after the cattle until after he had so made the deed. Watkins did not comply, and that was the end of the authorization given the servant, and while, if Watkins had applied to the servant and obtained from him the possession of the cattle, in ignorance by the servant of the fact that Watkins had not complied with his contract, it would have been a complete justification for the servant, as between him and his master, that, by no principle of law, would have passed the title between plaintiff and Watkins. As to what would have been the effect on the title of defendants had the servant so delivered the cattle to Watkins on his demand, and the defendants had taken title under Watkins, it is not necessary to decide, for the reason that the servant did not turn over the cattle to him, never acted on the authority from plaintiff, and Watkins did not acquire possession thereunder.

V. It is also claimed by defendants that plaintiff, in a conversation had with one Wyman, admitted enough to entitle them to the opinion of the jury as to

whether or not the sale was complete. This witness testified as follows: That he was constable, and went out with plaintiff to see Watkins. Plaintiff told him on this trip that he had traded a lot of cattle to Watkins for nine lots in Independence; that a good many cattle had died, and for that reason he had wanted Watkins to take the cattle and be responsible for them; that he wanted Watkins to settle for the cattle. "I was constable and wanted him to get a warrant and have Watkins arrested. He said he had made a pretty good trade, and wanted Watkins to clear up the title to the lots; that Watkins had eight hundred dollars in bank and could pay it if he would. He said there was a mortgage on the lots which Watkins was to pay up; and that Watkins had not done so," etc. On cross-examination the witness said, that plaintiff told him he had some cattle stolen, and that Pettingall had shipped them, and he had information that Watkins was connected with it, and he wanted to see him, and if he did not settle with him, he was going to prosecute him. This evidence is wholly inconsistent with the inference sought to be drawn by defendants. If the cattle belonged to Watkins, why was plaintiff charging him with the theft, and talking about having him prosecuted as a criminal? If the constable understood plaintiff as admitting the sale, why did he suggest to him to get out a warrant for Watkins? If the cattle belonged to Watkins why was plaintiff concerned about them dying, when the loss would fall on Watkins? If they belonged to Watkins why did plaintiff say he wanted him to take the cattle and be responsible for them? This shows he had not taken them.

VI. If this sale was completed it was, at least, as early as the first of July. Why, then, was plaintiff keeping the cattle for a month? There is not one word of explanation. The possession of plaintiff at the time the cattle were taken from his pasture, was *prima-facie* evidence of title. If Watkins took the cattle under

color of his contract, why did he take them away in the night time? It is answered, because the weather was hot, and the night was the more favorable time for such removal, and driving to the shipping point. But why was nothing said to the servant in charge when they went after them? If Watkins took the cattle, why was no explanation made by him when the country was being flooded with handbills advertising the cattle as stolen?

VII. Would any court, on the evidence disclosed by this record, permit a jury to find that if these cattle had died in plaintiff's pasture on the ninth day of August, 1886, the loss would have fallen on Watkins? If not, how can this verdict be sustained that finds that on that day the cattle belonged, not to plaintiff, but to Watkins?

VIII. We recognize, in all its breadth, the rule that in trials before juries, where there is any evidence which tends to establish the complaint or defence, from which the jury might reasonably infer the essential fact, the court should not take the case from the jury. But it is as equally true, that where there can be no reasonable inference drawn from the facts proven to uphold the claim or defence, it is the clear duty of the court to say so to the jury, and not permit them, against law and reason, to confiscate private property.

IX. The instructions given on behalf of defendants, and the amendments already noted as made to the plaintiff's instructions, improperly placed the case before the jury. For instance, they speak of an "understanding that Watkins was to take possession of said cattle and be responsible therefor;" and "delivered the possession of said cattle to said Watkins under said contract;" and if the cattle were "taken out of the possession of the plaintiff by one Watkins," and the like. There was no evidence to justify such submissions.

The sixth instruction given for defendants was wrong as applied to the facts of this case, because it authorized

the jury to find the fact of a completed sale, if they found that the parties had agreed upon a sale and purchase, "nothing remaining to be done by the seller in order to identify the said cattle in case of a sale under such circumstances, the title to the cattle will rest in the buyer without actual delivery." This is an abstraction. It might well enough apply to a contract touching specific property, where no act of segregation by the vendor was necessary to identify it in order to complete the sale. But the question here is, was the contract an executed or executory agreement; was it to be complete on the making of title by Watkins to plaintiff for the lots, or without plaintiff having a deed? That was the issue, and the instruction should have been directed to the facts of the case on trial; and avoided mere abstractions which are calculated to mislead.

X. Unless the defendants can materially strengthen their evidence, it would be the plain duty of the court to instruct the jury, to the effect that if they found that plaintiff was the owner of the cattle when negotiations between him and Watkins began respecting the change of the lots for the cattle, the presumption of law is, that he so continues to be such owner; and it devolves on the defendants to show affirmatively that plaintiff has since unconditionally parted with his title therein; and there is no such proof in this case.

The other judges concurring, the judgment is reversed and the cause remanded.